DOY/346937                                                          4704-10-51

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID'S BRIDAL, INC. and DBD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE HOUSE OF BRIDES, INC. and HOUSE OF BRIDES WORLD'S LARGEST "ON-LINE" WEDDING STORE, INC., <br><br> Defendants. | Civil Action No. 06 CV 05660 (SRC) <br><br> **HOB'S MEMORANDUM OF LAW IN OPPOSITION TO THIRD PARTY DEFENDANT EMME BRIDAL, INC.'S MOTION FOR SUMMARY JUDGMENT** |

Defendants, House of Brides, Inc. and House of Brides World's Largest "On-Line" Wedding Store, Inc.'s (collectively "House of Brides" or "HOB"), by and through their attorneys, Tressler LLP, hereby submit their Memorandum of Law in Opposition to Third Party Defendant Emme Bridal, Inc.'s Motion for Summary Judgment.

## I.      INTRODUCTION

This case presents the classic scenario for a third party action. Plaintiffs David's Bridal, Inc. and DBD, Inc. (collectively, "David's") have asserted trademark and copyright claims arising from: (1) HOB's marketing of Emme's goods in the manner suggested by Emme and (2) HOB's sale of bridal dresses manufactured by Emme that David's claims infringe David's copyrights in certain

of its bridal dresses.  Although the dresses at issue were manufactured by Emme and the marketing campaign that is the subject of David's complaints was suggested and influenced by Emme, David's has asserted no claims against Emme.[1]  Emme has filed a motion for summary judgment attacking all of HOB's claims against Emme, as well as David's claims against HOB.  To the extent that Emme's motion attacks David's claims, HOB takes no issue with any of Emme's arguments and in fact adopts and incorporates Emme's arguments.  However, with respect to HOB's claims against Emme, there are genuine issues of material fact that preclude summary judgment in Emme's favor.

## II.   **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

HOB has purchased wedding dresses from Emme since Emme began operations more than 8 years ago.  In the course of dealing with Emme, HOB's principal, Dale Buziecki, developed a business relationship with Emme representatives Mike Yeh and Nick Yeh.  (HOB's Additional Facts at ¶¶ 3-4).

In 2004 David's filed a lawsuit against Emme in Texas alleging various claims, including claims for unfair competition and copyright infringement.  That lawsuit, which was pending before Judge Atlas, was settled on December 14, 2004.  (*Id*. at ¶ 5).

---

[1] HOB has filed its own Motion for Summary Judgment with regard to all of David's claims. With respect to David's copyright claims, HOB has adopted Emme's Motion for Summary Judgment.  HOB maintains its position that David's claims are without merit, and nothing in this Response affects HOB's position as to David's claims.

2

Emme sent out form letters to its retail customers beginning on June 1, 2004. HOB received these letters from Emme, which advised HOB that it should compare DaVinci dress styles and prices to what Emme represented were comparable dresses of David's. (*Id.* at ¶¶ 6-7). The letters advised Emme's retail customers, including HOB, that such retailers "should compare DaVinci to David's based on substantial similarity of their common dress styles, DaVinci's substantially lower price," and that "DaVinci's Fall 2004 line features several new, low-priced versions of David's Oleg Cassini dresses". (*Id.* at ¶ 7).

Prior to June 2006 Emme sent HOB marketing materials for a line of dresses sold by Emme that Emme called "Dare to Compare", specifically referencing DaVinci dresses sold by Emme that were similar to those sold by David's. Emme promoted the dresses as "Dare to Compare", and in its promotions indicated "Our Style", the "Compare David's Style", and David's prices. In those promotions Emme provided House of Brides with cross-references for David's style numbers and prices as compared to style numbers and prices for the comparable Emme dresses. (*Id.* at ¶ 8).

House of Brides obtained the idea to use the term "Compare to David's" in selling the DaVinci collection from Emme's sales literature that was sent to House of Brides. This literature was titled "Dare to Compare", and featured the DaVinci

3

style number, the "Compare David's Style" number, David's prices, and DaVinci's prices. (*Id.* at ¶ 9).

The DaVinci dresses were similar in style to the dresses being sold by David's. Emme advised HOB that the "Compare to David's" dresses were comparable to the dresses sold by David's in terms of color, style, shape and design. (*Id.* at ¶ 10).

David's was a competitor of HOB, and Emme's dresses were promoted by Emme as being similar to but less expensive than David's. HOB's intent in advertising and selling the DaVinci dresses was to follow Emme's directive by competing with David's by selling comparable dresses at lower prices. (*Id.* at ¶ 11).

Many other retailers have advertised their sales of Emme's dresses in a manner similar to HOB. Numerous other retailers promote the comparable DaVinci dresses in a manner similar to HOB, as is evidenced by an Internet search of "Compare to David's". However, David's has not filed claims against any retailer other than HOB. (*Id.* at ¶ 15).

David's filed this lawsuit against HOB on November 28, 2006. However, HOB was not served with Emme's Complaint in this case until late June 2007. (*Id.* at ¶ 12).

4

In either April or October 2007, Buziecki had a conversation with Nick Yeh and Mike Yeh at the Chicago Bridal Market trade show at the Chicago Merchandise Mart. Buziecki was at the DaVinci booth at the show and spoke with Nick Yeh and Mike Yeh. The Yehs told him at that time that they knew that David's had sued HOB for trademark infringement and asked him how the case was going. He informed the Yehs that David's suit was for both trademark and copyright infringement, and he thought the primary claim was copyright infringement. The Yehs responded that there were no copyright issues with Emme's dresses, and that if there were David's would have sued Emme. They also brought up at that time the prior litigation that Emme and David's had been involved with in Texas, and that after that case ended Emme made sure there were no further issues with infringing on David's copyrights. (*Id*. at ¶ 13).

Around the time that HOB was seeking leave to file its third party complaint in this case in the latter part of 2008, Buziecki telephoned Mike Yeh to inform him that HOB was bringing Emme into this case. Since they had a good business relationship, Buziecki wanted him to hear it from him and he did not want Yeh to be surprised. At that time Buziecki and Yeh had a similar conversation to what he had with Yeh and his brother Nick back at the Chicago Bridal Show back in 2007. At that time Yeh again stated that he felt David's primary claim was a trademark claim, that Buziecki told him he thought it was primarily a copyright case, and Yeh

reassured him that there were no copyright issues with Emme's dresses.  (*Id.* at ¶ 14).

### III.   ARGUMENT

Emme's motion for summary judgment should be denied in its entirety. First, Emme argues that HOB failed to provide timely notice to Emme of David's claims against HOB as required by the Illinois UCC.  However, there is evidence that Emme had actual notice of David's claims.  Also, there is sufficient evidence that HOB provided timely notice to Emme.  Second, HOB's claims for implied indemnification for David's federal statutory claims does not fail as a matter of law.  Third, Emme can be liable for David's trademark claims because there is evidence of Emme's involvement in the wrongdoing alleged by David's against HOB.[2]

### A.   There Are Fact Issues On HOB's Compliance With The Notice Requirements Of The Uniform Commercial Code

Emme argues that HOB failed to meet the condition precedent for bringing a cause of action for breach of warranty of title and against infringement because it failed to comply with the notice requirements of 810 ILCS 5/2-312.  Emme is wrong.

---

[2] With respect to Emme's arguments that David's trademark claims fail as a matter of law because David's has no evidence of confusion, David's has no viable copyright claim and that David's claims for statutory damages and attorney's fees fail as a matter of law, HOB agrees with Emme's position on these points and has adopted Emme's arguments in its Motion for Summary Judgment.

Emme first argues that HOB "has failed to plead, let alone establish, that it ever timely notified Emme." (Emme Mem. at 9-10).[3] This argument is without merit. First, Emme filed an Answer to HOB's Third Party Complaint, and thus waived any argument that HOB's pleading was insufficient in any manner, including on the notice issue. *See* Fed.R.Civ.P. 12(b)(6). As to Emme's argument that HOB has not yet "established" that notice was sufficient, HOB has not yet had the opportunity or need to do so. That will occur at trial. Summary judgment cannot be entered on this issue as HOB has presented sufficient evidence relating to notice that this issue must be decided by the jury. *See, e.g., Gober v. Revlon, Inc.*, 317 F.2d 47, 52 (4th Cir. 1963).

While it is true that a buyer must notify a seller of a breach of warranty within a reasonable time after it should have discovered the breach, under the UCC "reasonable time" depends on the nature, purpose and circumstances of the particular case. 810 ILCS 5/1-205(a); *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 675 N.E.2d 584, 589 (1996). The UCC does not specify the amount of time in which notice must be provided. The standard is simply that a buyer must give notice to the seller within a reasonable time after the breach is discovered. 810

---

[3] Under Illinois law, a buyer is not required to notify the seller that the buyer considers the deficiencies of a product to constitute a breach in order to fulfill its notice obligations under the UCC. *Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710, 715 (7th Cir. 1991). Notification need merely be sufficient to let the seller know that the transaction is troublesome. *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill.App.3d 1068, 445 N.E.2d 19, 25 (5th Dist. 1982). However, Emme does not contest the content or manner in which HOB provided it with notice, but only with the timeliness of the notice.

ILCS 5/2-607(3).   "Reasonable time" depends on the nature, purpose and circumstances of the particular case and is a fact question.  810 ILCS 5/1-205(a); *Cancun Adventure Tours, Inc., v. Underwater Designer Co,* 862 F.2d 1044, 1047 (4th Cir. 1989).  Moreover, direct notice from a buyer is not required when:  (1) the seller has actual knowledge of the defect of the particular product; or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of warranty.  *Id.*

Emme argues that HOB did not provide it with notice as required by the Illinois UCC.  However, the issue of whether a buyer has given a seller proper notice is a question of fact dependent on the circumstances of each case that is not appropriately decided in the context of a motion for summary judgment.  *Id.*

### 1.    No Notice Was Required Here As Emme Was Aware Of David's Claims Against HOB

A buyer is deemed to have met the notice requirement when the seller has actual knowledge of the issue with the subject product.  *Malawy v. Richards Mfg. Co.,* 150 Ill.App.3d 549, 501 N.E.2d 376, 384 (5th Dist. 1986).  Here, Emme was aware of the potential infringing nature of its dresses even before David's filed this lawsuit.  In fact, before this case was filed Emme was sued by David's in Texas over the manner in which Emme marketed its products related to David's.  (Emme Fact Statement, ¶ 16).  The Texas lawsuit involved some of the same DiVinci dresses that are the subject of this lawsuit.  (Id.).  Thus, before this lawsuit was

filed Emme was aware of David's claims relating to the DaVinci dresses and the nature of how Emme marketed those dresses.  Therefore, Emme was on notice of the potential troublesome nature of the subject products even before it was brought into this case.

Moreover, Emme representatives Nick Yeh and Mike Yeh raised issues relating to David's claims in this lawsuit with HOB's representative Dale Buziecki at a trade show in Chicago back in 2007.  (HOB Additional Facts ¶ 13).  By doing so, they demonstrated that by that time Emme was well aware of David's claims against HOB.  (Id.).  At that time, Buziecki asked the Yehs about the subject dresses and if there were any copyright issues with Emme's dresses.  The Yehs reassured Buziecki that, contrary to David's claims, the dresses did not infringe David's copyrights.  (Id.).

### 2. Even If Emme Was Not Aware Of David's Claims Whether HOB's Notice To Emme Was Timely Is A Fact Issue

Emme does not dispute the fact that HOB provided Emme with notice in this case.  Emme merely contends that HOB's notice was not timely. First, Emme's reference to the date of September 12, 2006 is irrelevant.  That was the date of David's letter to HOB merely raising the possibility of pursuing a claim.  However, David's did not file this lawsuit against HOB until November 28, 2006, and HOB

was not served with the lawsuit until June 26, 2007.[4]  Under the relevant provision

of the UCC, a buyer must notify a seller within a reasonable time after he receives

**notice of the litigation**.   810 ILCS 5/2-607(3)(b) (emphasis added).   Thus, the

pertinent date from which to determine whether notice was timely was when HOB

was served with David's lawsuit, and not when it received David's pre-suit letter.

However, even if the September 12, 2006 date were the relevant date, Emme

is still not entitled to summary judgment.   HOB discussed David's claims with

Emme at a trade show in Chicago in 2007.   As discussed above, there is no hard

and fast rule as to what constitutes a reasonable time frame for notice to a seller.

This is a fact issue that cannot be decided on summary judgment.   At the very

least, there is a fact issue as to whether this notice was reasonable under the UCC.

Moreover, even if Emme were correct on the facts as to when it received

notice of David's claims (which it is not), summary judgment in Emme's favor

would still not be proper.   The evidence provided here by both HOB and Emme

creates a question of fact as to whether or not HOB provided Emme with the

requisite notice of the David's claims.   *See, e.g., Goldstein v. G.D. Searle & Co.,*

62 Ill.App.3d 344, 378 N.E.2d 1083 (1st Dist. 1978) (summary judgment was not

appropriate when notice of breach of implied warranty was given four years after

---

[4] HOB was not served with David's Complaint until June 26, 2007.  (HOB Additional Facts
¶ 12).  HOB filed its motion for leave to file its third party complaint against Emme on October
17, 2008.  Thus, Emme's argument that HOB waited more than two years to bring its Third Party
Complaint against Emme is incorrect.

discovery); *Malawy*, 501 N.E.2d at 384 (notice given three years after injury was not unreasonable); *Maldonado v. Creative Woodworking Concepts, Inc,* 296 Ill.App.3d 935, 694 N.E.2d 1021 (3ʳᵈ Dist. 1998) (notice was not unreasonable as a matter of law when suit was filed three years and seven months after injury because there was no evidence that the delay prejudiced the seller or that it was in bad faith).

Emme's suggestion that it was prejudiced by HOB's delay in providing notice or bringing it into this case is disputed and is not true. Here, Emme suffered no prejudice as a result of any delay by HOB in providing notice or filing its third party action. Emme's argument that HOB's alleged delay "prevented Emme from being able to mitigate any potential or alleged damage and to investigate the allegations" is without merit. (Emme Mem. at 12). Emme was well aware of David's potential claims even before David's sued HOB. As evidenced by the extensive Texas proceedings between David's and Emme and the Yeh-Buziecki conversation at the Chicago trade show, Emme had actual notice of David's claims against HOB. Thus, Emme had every opportunity to investigate the allegations and in fact did so prior to ever speaking with HOB about the issue. However, there simply was no prejudice because Emme has always taken the position that David's claims against HOB relating to the subject dresses are without merit, as shown by its Answer to the Third Party Complaint and its summary judgment motion. Since

being named in this case, Emme has not changed its conduct at all, and continues today to make and sell the allegedly infringing dresses just as it had prior to being named in this case.

Emme's complaint about when it was brought into this case is also countered by the fact that this Court granted HOB leave to file its Third Party Complaint. Emme had the opportunity to raise any issue it had with the timing of when it was brought into this case when it filed its responsive pleading. It failed to do so. Instead, it filed an Answer to HOB's Third Party Complaint, asked for and received an extension of the discovery cutoff date, and since then has taken extensive discovery to defend this case, including issuing multiple sets of written discovery to both David's and HOB, and has deposed HOB and David's representatives. There is in fact nothing in discovery or any other aspect of this case that Emme was precluded from doing as a result of any delay in it being brought into this case.

Emme fails to provide any evidence to support its claim that the timing of when it was brought into this case prevented it from being able to mitigate any potential damage or investigate the allegations. There is no evidence that Emme has done anything in reaction to the subject claims other than deny any infringement. In fact, instead of providing any such evidence, Emme merely cites to another case whose facts have no similarity to the fact issues present in this case.

Moreover, Emme continues to sell the subject allegedly infringing dresses to its numerous customers.  Emme has made no attempt to modify the dresses despite knowing for years now that David's claims that the subject dresses infringe David's copyrights.  Contrary to Emme's suggestion of what it could have done, Emme has never offered to take over HOB's defense of this case, and has never demanded, or for that matter even asked, that HOB turn control over the litigation to Emme, despite ample time and opportunity to do so.

The question of reasonableness of notice was discussed in great detail in *Mullins v. Wyatt*, 887 S.W.2d 356 (Ky. 1994).  There a seller moved for summary judgment on the ground that, by failing to give pre-litigation notice of breach of warranty, the purchaser had not complied with UCC 2-607(3)(a).  *Id.*  The issue in that case was whether the service of a summons and an accompanying complaint could satisfy the notice requirement of UCC Section 2-607(3)(a).  *Id.* at 357.  If the complaint could serve as notice under UCC Section 2-607(3)(a), then whether such notice was given within a reasonable time would be a genuine issue of a material fact, thereby making summary judgment improper.  *Id.*  The court held that notice by means of litigation was sufficient.  *Id.*  The court noted that the major emphasis in the statute was that notice must be made "within a reasonable time."  *Id.*  The court found that, in sum, there was a dissonance between the casual tone of the statute and a result so draconian as dismissal."  *Id.*  The court noted that an

examination of the authorities revealed that the only substantial reason for the requirement was the opportunity for settlement. *Id.* at 358. The court held there was simply an insufficient basis in text or in logic to require peremptory application of a pre-litigation notice rule; when this was considered in conjunction with what might be good and valid reasons in a proper case to refrain from pre-litigation notice, it necessarily followed that failure to give the notice was not fatal to a civil action for breach of warranty. *Id.* Whether the notice given was within a reasonable time was determined to be an issue of fact. *Id.* Similarly, here the issue of whether Emme had notice within a reasonable time is a fact issue that must be decided by the jury and cannot be decided on summary judgment.

**B.     HOB Legally Has A Viable Claim For Indemnification Against Emme For David's Trademark And Copyright Infringement Claims**

In Count II of its Third Party Complaint, HOB pled a valid claim for implied indemnification against Emme. David's argues that HOB's claim fails because there is generally no right to indemnification under federal law. While Emme may be correct, its argument is irrelevant, as HOB's claim is based upon state law, not federal law. A state law indemnity claim is permissible so long as it is not preempted by the Copyright Act or the Lanham Act. Here, there is no such preemption.

While Emme contends that the law barring indemnity claims in this factual context is clear, the case law cited in Emme's own brief in fact supports HOB's

14

position.  A state common law claim for indemnity is not preempted by the Copyright Act.  *Foley v. Luster*, 249 F.3d 1281 (11th Cir. 2001) (holding that a state common law claim of indemnity was not preempted by the Copyright Act).  In *Foley*, the Eleventh Circuit addressed whether the Copyright Act, 17 U.S.C. § 301, preempted claims by a group of defendants that distributed videos created solely by a co-defendant and which included infringing songs.  *Id.* at 1284-85.  The court first noted that Section 301 of the Act did not preempt a state law claim for indemnity because the Act established a set of rights for copyrights holders and to provide remedies to protect those copyrights.  Since the indemnity claim did not touch upon the rights of the copyright owner, but rather the "allocation of responsibility between copyright infringers," the court held that Section 301 did not apply to this claim.  *Id.* at 1286.  Similarly, the court held that a state common law claim for indemnity was not preempted under general preemption principles, such as explicit preemption, conflict preemption, or field preemption.  *Id.* at 1288.

Even if a common law claim for indemnity cannot arise for violations of the copyright or trademark statutes, courts have recognized that a party may state a cause of action for indemnity based on a violation of a state's statute.  Here HOB has pled that state statute, 810 ILCS 5/2-312.  In the event that David's claims are valid, HOB has the right to indemnity under that statute for Emme's breach of warranty against infringement  *See, e.g., Fra nk Betz Assoc., Inc. v. Signature*

15

*Homes, Inc.*, 2009 U.S.Dist. LEXIS 59354 (M.D.Tenn.); *Pure Country Weavers,*
*Inc. v. Bristar, Inc.*, 410 F.Supp.2d 439 (W.D.N.C. 2006).

In *Frank Betz*, plaintiff, a designer of original architectural works, sued
Signature Homes, which had allegedly published infringing home plans and sold
homes based on the plaintiff's plans.  Prior to that lawsuit, the plaintiff had also
sued Turner Designs for infringement, and that case was settled prior to the
Signature lawsuit.  Signature had bought many of the infringing home designs
from Turner, and after plaintiff filed suit against it, Signature filed a third-party
complaint against Turner seeking indemnification from Turner based on these
claims.   Turner moved for summary judgment arguing that no right to
indemnification existed under the Copyright Act.  The court denied the motion,
holding that Signature could assert a claim for indemnification based on a violation
of a state statute.  *Id.* at *12.

Similarly, in a case cited by Emme, the court held that a retailer that sold
allegedly infringing products obtained from a co-defendant supplier could maintain
a claim for indemnity based on a statutory violation of the state's commercial code.
*Pure Country Weavers*, 410 F.Supp.2d at 448.  The *Pure Country Weavers* court
noted that a claim for indemnity based on a breach of warranty of title and
infringement is not controlled by whether the right has been affirmatively created
by Congress or created by federal common law.  Instead, the court found that to

determine whether indemnification based on a statutory violation was precluded, it would need to determine if the Copyright Act preempted the state statute. To determine whether it was preempted, the court applied a two-step test: "first, the work must be within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102, 103, and second, the rights granted under state law must be equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Id.* For a state law claim not to infringe on an exclusive right under the copyright statute, it must have elements "beyond those necessary to prove copyright infringement, and must regulate conduct qualitatively different from the conduct governed by federal copyright law." The court ultimately held that a breach of warranty of title and against infringement regulates the relations between buyer and seller rather than the relationship between a creator of protected work and those seeking to reproduce such work, and thus was not preempted. *Id.*

The same analysis applies to HOB's indemnity claim against Emme here. The claim concerns the relationship between a buyer (HOB) and seller (Emme) rather than the relationship between a creator of the protected work (David's) and those seeking to reproduce such work (Emme). The commercial code provision analyzed in *Pure Country Weavers* mirrors the Illinois provision concerning the warranty of title and against infringement. Thus, the analysis should equally apply to uphold HOB's indemnity claim against Emme in this action.

Therefore, HOB's indemnity is not barred as a matter of law.  HOB has a valid claim for indemnification based on state common law.  Alternatively, HOB's indemnity claim survives based on the Illinois Uniform Commercial Code's provisions regarding warranty of title and against infringement.

**C.**  **Emme Can Be Liable For David's Trademark Claims**

Emme may be liable for David's trademark infringement claims if HOB is held liable.  Emme's marketing materials that were sent to HOB suggested that HOB use the phrase "Compare to David's".  (HOB's Additional Facts ¶ 8).  In its marketing materials, Emme used the phrase "Dare to Compare" and did not mention the DaVinci name.  (Id.).  Additionally, Emme provided the David's style number, the "Dare to Compare" or "Compare David's Style" style number, David's pricing and the "Dare to Compare" pricing.  (Id.).  Thus, Emme's argument that it never endorsed or advised HOB to use David's trademark to buy the DaVinci dresses is simply incorrect.  At the very least, there are fact issues on this claim.  Mike Yeh's testimony that what appeared on HOB's website was HOB's own doing is also incorrect and disputed as it ignores the marketing materials and suggestions from Emme.  (Id. at ¶¶ 8-11).

Emme relies on misconstrued testimony and attempts to evade its actions which directly led to HOB promoting Emme's product in the manner in which David's claims are based.  Mike Yeh's testimony that HOB's conduct was HOB's

"own doing" is incorrect.  (Id.).  Emme was not just an innocent seller of wedding dresses.  Emme took the following actions that led to David's claims:

    a.      instructed HOB to "take the fight to David's";

    b.      submitted marketing materials to HOB titled "Dare to Compare", including "Compare David's Style", and containing no reference to the DaVinci name in the title;

    c.      provided HOB with David's style number, David's prices, and the comparable Emme style number and Emme's suggested retail prices; and

    d.      instructed HOB to compare the similarities between Emme's products and David's products.

(*Id.* at ¶¶ 6-11).

The words "Compare" and "David's" were prominently featured in Emme's marketing materials.  (Id.).  Emme's actions led to HOB's development of the website in the manner to which David's claims are based.  (Id.).  In fact, Emme's promotions also led other bridal retailers who purchase and sell Emme's dresses to promote those dresses in a manner similar to HOB.  (Id. at ¶ 15).  This evidence is sufficient for a jury to find that Emme should indemnify HOB.

Emme's arguments that it was merely complying with Judge Atlas' Orders, that HOB was solely responsible for the content of HOB's website, and that HOB

should have asked Emme permission to place the subject slogan on the website are all questions that must be presented to the jury, not appropriate in the context of a summary judgment motion. Certainly given HOB's evidence, Emme's argument that it had nothing to do with HOB's conduct which forms the basis of David's claims is hotly contested and, based upon the evidence presented, incorrect.

Likewise, Emme's arguments that Emme's agents never saw the subject content on HOB's website prior to it being placed on the site, and that HOB did not ask Emme for permission to place the slogan on the site are not dispositive. Emme's letters and marketing materials caused HOB to use the subject content. Whether Emme's arguments preclude HOB's indemnity claim must be decided by the jury.

## IV.    **CONCLUSION**

For the reasons set forth above, it is respectfully requested that this Court deny Emme's motion for summary judgment and for such further relief as this Court deems just and appropriate.

Dated: November 2, 2009    Respectfully submitted,
Newark, New Jersey

By: s/ Joanna L. Crosby (JL 1712)
         Joanna L. Crosby

Tressler LLP
744 Broad Street, Suite 1510
Newark, NJ 07102
(973) 848-2900

James K. Borcia
Tressler LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000
Attorneys for Defendants/Third Party
Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID'S BRIDAL, INC. and DBD, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) DOCUMENT |
| | ) ELECTRONICALLY FILED |
| THE HOUSE OF BRIDES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

I, JOANNA L. CROSBY, hereby certify that on this date:

1.    A PDF version of HOB'S MEMORANDUM OF LAW IN OPPOSITION TO THIRD PARTY DEFENDANT EMME BRIDAL, INC.'S MOTION FOR SUMMARY JUDGMENT were filed electronically as follows:

http://ecf.njd.uscourts.gov/cgi-bin/login.pl

2.    Copies of HOB'S MEMORANDUM OF LAW IN OPPOSITION TO THIRD PARTY DEFENDANT EMME BRIDAL, INC.'S MOTION FOR SUMMARY JUDGMENT were sent electronically as follows:

Marc D. Haefner, Esq.             Christopher P. Kelly, Esq.
Nicole B. Dory                    J. Vincent Reppert, Esq.
Rukhsanah L. Lighari              Reppert Kelly LLC
Connell Foley LLP                 403 King George Road, Suite 201
85 Livingston Avenue              Basking Ridge, NJ 07920
Roseland, NJ  07068

3.     A copy of HOB'S MEMORANDUM OF LAW IN OPPOSITION TO THIRD PARTY DEFENDANT EMME BRIDAL, INC.'S MOTION FOR SUMMARY JUDGMENT was placed in the U.S. Mail as follows:

> The Honorable Stanley R Chesler
> Martin Luther King, Jr. Federal Building
> 50 Walnut Street, Room PO 08
> Newark, NJ 07101

By:  s/ Joanna L. Crosby (JL 1712)
        Joanna L. Crosby


DATED:     November 2, 2009
               Newark, New Jersey

Tressler LLP
744 Broad Street, Suite 1510
Newark, NJ 07102
(973) 848-2900

James K. Borcia
Tressler LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000
Attorneys for Defendants/Third Party Plaintiffs

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................. 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................... 2

III.   ARGUMENT ..................................................................................... 6

       A.    There Are Fact Issues On HOB's Compliance With
            The Notice Requirements Of The Uniform Commercial Code ........... 6

            1.    No Notice Was Required Here As Emme Was
                 Aware Of David's Claims Against HOB ................................... 8

            2.    Even If Emme Was Not Aware Of David's Claims
                 Whether HOB's Notice To Emme Was Timely
                 Is A Fact Issue ........................................................................... 9

       B.    HOB Legally Has A Viable Claim For Indemnification
            Against Emme For David's Trademark And Copyright
            Infringement Claims ........................................................................... 14

       C.    Emme Can Be Liable For David's Trademark Claims ...................... 18

IV.   CONCLUSION ................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Arcor, Inc. v. Textron, Inc.,*
  960 F.2d 710, 715 (7th Cir. 1991) .................................................................... 7

*Cancun Adventure Tours, Inc., v. Underwater Designer Co,*
  862 F.2d 1044, 1047 (4th Cir. 1989) ............................................................... 8

*Connick v. Suzuki Motor Co.,*
  174 Ill.2d 482, 675 N.E.2d 584, 589 (1996)..................................................... 7

*Crest Container Corp. v. R.H. Bishop Co.,*
  111 Ill.App.3d 1068, 445 N.E.2d 19, 25 (5th Dist. 1982)............................... 7

*Foley v. Luster,*
  249 F.3d 1281 (11th Cir. 2001) ....................................................................... 15

*Frank Betz Assoc., Inc. v. Signature Homes, Inc.,*
  2009 U.S.Dist. LEXIS 59354 (M.D.Tenn.)................................................... 16

*Gober v. Revlon, Inc.,*
  317 F.2d 47, 52 (4th Cir. 1963) ........................................................................ 7

*Goldstein v. G.D. Searle & Co.,*
  62 Ill.App.3d 344, 378 N.E.2d 1083 (1st Dist. 1978) .................................... 10

*Malawy v. Richards Mfg. Co.,*
  150 Ill.App.3d 549, 501 N.E.2d 376, 384 (5th Dist. 1986)............................. 8

*Maldonado v. Creative Woodworking Concepts, Inc,*
  296 Ill.App.3d 935, 694 N.E.2d 1021 (3rd Dist. 1998)................................. 11

*Mullins v. Wyatt,*
  887 S.W.2d 356 (Ky. 1994)............................................................................ 13

*Pure Country Weavers, Inc. v. Bristar, Inc.,*
  410 F.Supp.2d 439 (W.D.N.C. 2006).................................................... 16, 17

## Other Authorities

17 U.S.C. §§ 102, 103 ........................................................................................ 17

17 U.S.C. § 106 ................................................................................................. 17

17 U.S.C. § 301 ................................................................................................. 15

810 ILCS 5/1-205(a) ....................................................................................... 7, 8

810 ILCS 5/2-312 ............................................................................................... 6

810 ILCS 5/2-607(3) ........................................................................................... 8

810 ILCS 5/2-607(3)(b) .................................................................................... 10

Fed.R.Civ.P. 12(b)(6) .......................................................................................... 7

UCC 2-607(3)(a) ............................................................................................... 14

UCC Section 2-607(3)(a) .................................................................................. 15