**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————
:
DAVID'S BRIDAL, INC. and DBD, INC.,   :
:
          Plaintiffs,   :   Civil Action No. 06-5660 (SRC)
:
    v.   :   **OPINION**
:
THE HOUSE OF BRIDES, INC. et al.,   :
:
          Defendants/   :
          Third-party Plaintiffs,   :
    v.   :
:
EMME BRIDAL, INC. et al.,   :
:
          Third-party Defendants.   :
———————————————————————
:

**CHESLER, U.S.D.J.**

      This matter comes before the Court on two motions for summary judgment, pursuant to

Federal Rule of Civil Procedure 56: 1) the motion by Defendants The House of Brides, Inc. and

House of Brides World's Largest "On-Line" Wedding Store, Inc. (collectively, "Defendants" or

"HOB"); and 2) the cross-motion for partial summary judgment by Plaintiffs David's Bridal, Inc.

and DBD, Inc. (collectively, "Plaintiffs" or "DBD"), as well as two related motions: 3) Plaintiffs'

motion to withdraw deemed admissions pursuant to Rule 36(b); and 4) Defendants' motion to

strike portions of Christopher Kelly and Kenneth Green's declarations.  For the reasons stated

below, Defendants' summary judgment motion will be denied, Plaintiffs' cross-motion for

summary judgment will be granted in part and denied in part, Plaintiffs' motion to withdraw

deemed admissions will be granted, and Defendants' motion to strike will be denied.

**BACKGROUND**

HOB and DBD are competitors in the retail bridal business.  HOB owns and operates a commercial website (the "HOB Website") for the retail sale of bridal gowns under the domain name www.houseofbrides.com.  DBD owns and operates 305 DAVID'S BRIDAL® retail stores in the United States.  DBD owns federal trademark registration no. 78226241 for the mark "David's Bridal" for bridal gowns.  DBD also owns federal service mark registration no. 78374628 for the mark "David's Bridal" for retail store services in the field of bridal gowns.  Both of these registrations bear a mark drawing code of (3), indicating that the mark comprises both the word mark "David's Bridal" and the logo design, which uses distinctive typography and a ♥ as an apostrophe.  DBD also owns federal service mark registration no. 2426973 for the mark "David's Bridal" for retail store services in the field of bridal gowns, for the word mark only.

On November 28, 2006, DBD filed a Complaint against HOB in this Court and, subsequently, a Second Amended Complaint which asserts seven claims: 1) federal trademark infringement; 2) federal unfair competition; 3) federal trademark dilution; 4) trademark infringement and unfair competition under New Jersey law; 5) trademark dilution under New Jersey law; 6) copyright infringement; and 7) false advertising under the Lanham Act.  On January 21, 2009, HOB filed a third-party complaint against Emme Bridal, Inc. ("Emme") and Impression Bridal, Inc.

On October 1, 2009, HOB filed its instant motion for summary judgment.  DBD responded with its instant cross-motion for partial summary judgment.  Also, on October 1, 2009, Emme filed a motion for summary judgment, which will be decided in a separate opinion, but which made arguments which HOB has adopted and asserted in its summary judgment brief.

<u>ANALYSIS</u>

I.      **Legal Standard**

     A.      <u>Motion for summary judgment</u>

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  <u>In re Bressman</u>, 327 F.3d 229, 238 (3d Cir. 2003) (quoting <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex</u>, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II.    Defendants' motion and Plaintiffs' cross-motion for summary judgment

### A.    First Claim: trademark infringement

Defendants move for partial summary judgment on the First Claim in the Second Amended Complaint, for trademark infringement in violation of the Lanham Act, 15 U.S.C. §

4

1114, and on the Fourth Claim, for trademark infringement in violation of New Jersey law, N.J. Stat. Ann. § 56:4-1.  Plaintiffs cross-move for summary judgment on these claims.

"To establish trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, a plaintiff must prove that (1) the mark is valid and legally protectable, (2) it owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or services." E.T. Browne Drug Co. v. Cococare Prods., 538 F.3d 185, 191 (3d Cir. 2008).

The parties do not dispute most of the relevant basic facts.  The alleged acts of infringement involve pages on the HOB Website.  DBD has submitted printouts of various pages from the HOB website, taken on various dates in 2006 and 2007.  (Kelly Dec. Exs. B, C, D, E, H, I.)  HOB has not disputed the authenticity or accuracy of these printouts.

During the period at issue, the HOB Website stated: "We are authorized retailers of all of the designers featured on our website."  (Kelly Dec. Ex. C; HOB 56.1 Resp. ¶ 16, Docket Entry No. 175.)  Two different web pages each have small boxes in two columns, one column on the left side of the page and one column on the right side of the page.  The boxes in the right-hand column appear to refer to the collections of various dress designers.  (Kelly Dec. Ex. D, E.)  Boxes of the same size and shape in the left-hand column contain various messages, with one box stating: "Compare to David's Bridal CLICK HERE!"  (Id.)  The parties do not dispute that the words "David's Bridal" in these boxes were in a font style identical to that appearing in the registered logo designs.[1]  (HOB 56.1 Resp. ¶ 19.)

Exhibit H of the Kelly Declaration contains web pages featuring eleven different dress

---

[1] The print in the web pages in Exhibits D and E of the Kelly Declaration is too small to clearly show whether these uses of "David's Bridal" include the heart apostrophe.

designs.  These pages are similar in that each state: "Designer: Compare to David's Bridal."

Each page then states:

> Compare style [HOB code] to David's Bridal style [DBD code]!  House of Brides
> presents the Compare to David's Bridal collection.  This exclusive collection
> offers beautiful wedding dresses comparable to David's Bridal top selling styles,
> all at amazing savings.  Compare to David's Bridal wedding dresses are 30% to
> 40% off David's Bridal suggested retail price!

Exhibit I of the Kelly Declaration contains similar dress design web pages, but each one includes

this disclaimer: "*House of Brides is not affiliated with, connected with, sponsored by,

manufactured by, or associated with any national chain store, including David's Bridal."

Attachment A in Exhibit F is a web page with the heading "Compare to David's Bridal,"

with pictures of various wedding dresses in the "Compare to David's Bridal" line.  On the right

side of the page is a column of boxes.  The top three boxes refer to discounts on the collections

of three designers.  The box at the bottom states: "Compare to David's Bridal CLICK HERE!"

Unlike the similar box previously described, the words "David's Bridal" in this box appear to

copy the David's Bridal logo, including the heart apostrophe.  The HOB Website stated that

HOB offers its customers "the same designer collections they find at more expensive boutique

bridal shops for an immensely lower cost."  (HOB 56.1 Resp. ¶ 17.)

The HOB Website worked as follows.  When a user clicked on one of the "Compare to

David's Bridal CLICK HERE!" boxes, the site served the page with the heading "Compare to

David's Bridal," which had approximately two dozen pictures of the wedding gowns in this

collection.  (HOB 56.1 Resp. ¶ 23.)  When a user clicked on a particular image, the site served

the page devoted to that specific dress design.  (Id.)  During the period at issue, there were 28 or

29 dresses in the "Compare to David's Bridal" collection (the "Compare Collection.") (Id. at ¶

6

24.)  The parties do not dispute that each web page devoted to a particular dress identified a corresponding David's Bridal dress by style number, and that the dress in the Compare Collection was "nearly identical in color and design style" to the corresponding David's Bridal dress.  (Id.)  The dresses in the Compare Collection were not authentic David's Bridal dresses.  (Id. at ¶ 25.)

In its Amended Answer, HOB asserts the affirmative defense of fair use to all claims.  In its motion for summary judgment, HOB narrows this to the affirmative defense of nominative fair use against the trademark infringement claims.  (HOB's MSJ Br. 12.)  The parties agree that the key Third Circuit case on nominative fair use is Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211 (3d Cir. 2005).

In Century 21, id. at 214, the Third Circuit adopted the Ninth Circuit's definition of the two types of nominative fair use:

> [N]ominative fair use occurs when the alleged infringer uses the [trademark holder's] mark to describe the [trademark holder's] product, even if the [alleged infringer's] ultimate goal is to describe his own product.  Nominative fair use also occurs if the only practical way to refer to something is to use the trademarked term.

KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 328 F.3d 1061, 1071-1072 (9th Cir. 2003) (citation omitted).[2]  The Third Circuit did not, however, adopt the Ninth Circuit's views on nominative fair use in toto, stating in disagreement:

> [I]t is clear to us that even a defendant's nominative use has the potential of confusing consumers with respect to its products or services.  Since the defendant ultimately uses the plaintiff's mark in a nominative case in order to describe its own product or services, even an accurate nominative use could potentially

---

[2] In what appears to merely be an inadvertent editing error, the quotation of this language that appears in Century 21 has left out the phrase "[trademark holder's] mark to describe."

7

confuse consumers about the plaintiff's endorsement or sponsorship of the defendant's products or services.

Century 21, 425 F.3d at 220-21.

The Third Circuit then articulated the analytical approach to be used in nominative fair use cases:

> Today we adopt a two-step approach in nominative fair use cases. The plaintiff must first prove that confusion is likely due to the defendant's use of plaintiff's mark. As we discuss more fully below, because our traditional likelihood of confusion test does not apply neatly to nominative fair use cases, we suggest eliminating those factors used to establish confusion in other trademark infringement cases that do not "fit" in the nominative use context. Once plaintiff has met its burden of proving that confusion is likely, the burden then shifts to defendant to show that its nominative use of plaintiff's mark is nonetheless fair. To demonstrate fairness, the defendant must satisfy a three-pronged nominative fair use test, derived to a great extent from the one articulated by the Court of Appeals for the Ninth Circuit. Under our fairness test, a defendant must show: (1) that the use of plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service; (2) that the defendant uses only so much of the plaintiff's mark as is necessary to describe plaintiff's product; and (3) that the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services.

Id. at 222.

The Third Circuit then addressed the proper test for likelihood of confusion and found that, in short, while the first two Lapp factors were not probative in a nominative fair use case, the remaining eight Lapp factors "could be analyzed in future nominative use cases, depending on the factual situation." Id. at 225.

Applying this legal framework to the evidence of the uses at issue on the HOB Website, the claims for trademark infringement are not amenable to resolution as a matter of law. Genuine issues as to material facts preclude any grant of summary judgment. This holds true for both HOB's motion and DBD's cross-motion.

As to HOB's motion, at trial, Plaintiffs bear the initial burden of proof that confusion is likely.  Thus, at this first step in the summary judgment analysis, as the moving party without the burden of proof at trial, HOB must point to an absence of evidence to support the nonmoving party's case.  HOB argues that only four of the Lapp factors are relevant in this case: price of the goods as a measure of the care expected of consumers, length of time of use without actual confusion, intent of the defendant in adopting the mark, and evidence of actual confusion.  HOB contends that DBD has no evidence to support a finding in its favor on any of these four factors. Even if this Court were to agree that only these four factors are relevant – and the Court today makes no ruling on that question – DBD defeats HOB's motion by pointing to evidence of actual confusion: the customer emails in Exhibit K of the Kelly Declaration.

HOB has moved to strike Exhibit K of the Kelly Declaration as inadmissible on two grounds: 1) lack of proper foundation; and 2) it contains inadmissible hearsay.  HOB does not persuade on either point.  As to the lack of proper foundation, HOB objects that the sworn statement by DBD's counsel that the emails were sent to HOB by prospective customers in 2006 and 2007 is insufficient because DBD's counsel cannot have personal knowledge of such facts; these documents, HOB argues, have not been authenticated and would not be admissible.  DBD counters, aptly, that HOB's motion brief itself admits that HOB actually received these emails. (See HOB Mot. to Strike ¶ 4.)  Federal Rule of Evidence 901(a) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  HOB produced these documents in discovery and, crucially, HOB has conceded that the matter in question is what its proponent claims.  Certainly, at this stage, HOB's concession of authenticity

is sufficient to defeat its objection on the basis of authenticity.

As to HOB's hearsay objection, the emails do not contain hearsay.  Federal Rule of Evidence 801(c) states: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." DBD offers the emails as evidence of actual confusion.  For example, DBD points to the April 18, 2007 email from Gill Monaghan, which states: "I am keen one of [sic] the David's Bridal dresses." (Kelly Dec. Ex. K.)  DBD does not offer this statement to prove the truth of the matter asserted – either that HOB was selling an actual David's Bridal dress, or that Gill Monaghan was keen on a particular dress – but to show that her state of mind was one of confusion over the source of the product.  Similarly, DBD points to the August 11, 2006 email of Katherine Luther, which refers to a "Compare to David's Bridal" dress and inquires: "Would that be the exact same dress or just a similar style?"  (Id.)  Again, this is not offered to prove any fact about the products, but to show that the author's state of mind was one of confusion over the source of the product.  This evidence is not hearsay.

As to Exhibit K of the Kelly Declaration, HOB has failed to persuade that the documents are inadmissible for lack of authentication or as hearsay.  The motion to strike will be denied.[3]

Having found the customer emails admissible, the Court finds that this evidence of actual confusion is sufficient to raise a genuine issue as to a material fact.  A reasonable jury could view this evidence and decide that DBD has proven actual confusion.  DBD has raised a factual dispute over one of the four factors that HOB asserts are relevant to the likelihood of confusion

---

[3] HOB has also moved to strike paragraph 13 of the Green Declaration.  Because DBD does not rely on this evidence, the Court need not reach this issue.

analysis.  This is sufficient to defeat HOB's motion for summary judgment on trademark infringement and unfair competition.

DBD has filed a cross-motion for partial summary judgment on its trademark infringement and unfair competition claims under both federal and state law.  As the movant bearing the burden of proof at trial, DBD bears the initial burden of showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  Bressman, 327 F.3d at 238.

The Third Circuit has urged great care in granting a motion for summary judgment in a trademark matter: "Failure to strictly observe the principles governing summary judgment becomes particularly significant in a trademark or tradename action, where summary judgments are the exception."  Country Floors, Inc. v. Gepner, 930 F.2d 1056, 1062-1063 (3d Cir. 1991). "[L]ikelihood of confusion is a question of fact."  Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1024 (3d Cir. 2008).  In Facenda, the Third Circuit held that the overall weighing of the Lapp factors is a question of fact, and that factual disputes over particular factors should be resolved at trial.  Id.

Following Facenda in the instant case, likelihood of confusion is not susceptible to resolution on summary judgment because of a factual dispute over at least one Lapp factor, "the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase."  Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983). There is no dispute that the wedding gowns at issue cost at least several hundred dollars apiece. A reasonable jury could hear this evidence and conclude that this factor weighs against a finding of infringement.  See Checkpoint Sys. v. Check Point Software Techs.,inc, 269 F.3d 270, 284 (3d

Cir. 2001) ("Where the relevant products are expensive . . courts have generally not found Lanham Act violations.")  At summary judgment, the Court cannot weigh the evidence.  Because there is evidence from which a reasonable jury could find that one factor weighs against a finding of infringement, this Court cannot conclude that the evidence "is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 252.  As to the trademark and unfair competition claims, Plaintiffs' cross-motion for summary judgment must be denied.

Plaintiffs' cross-motion also seeks summary judgment on Defendants' affirmative defense of nominative fair use.  Plaintiffs seek summary judgment as to the following uses:

1.  The "Compare to DAVID♥S BRIDAL" click box.

2.  The "Compare to DAVID'S BRIDAL" click boxes that copy the font styling of the registered marks, without the heart apostrophe.

3.  The statement "Designer: Compare to David's Bridal" on the individual dress pages.

4.  The statement "Compare to David's Bridal wedding dresses are 30% to 40% off David's Bridal suggested retail price!" on the individual dress pages.

Although the web pages in the record show other uses of the words "David's Bridal," Plaintiffs have not asserted these other uses in this cross-motion.

As the movant without the burden of proof of the affirmative defense at trial, Plaintiffs meet their initial burden simply by asserting the absence of evidence to support Defendants' defense.  The burden then shifts to Defendants to make a showing sufficient to establish the existence of all elements essential to their case.  As noted above, the affirmative defense of nominative fair use requires proof of the following elements:

12

> (1) that the use of plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service; (2) that the defendant uses only so much of the plaintiff's mark as is necessary to describe plaintiff's product; and (3) that the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services.

<u>Century 21</u>, 425 F.3d at 222.

Defendants' brief in opposition to the cross-motion fails to recognize what it must do to defeat the cross-motion: point to the evidence from which a reasonable jury could conclude that it has proven these three elements for each of the four uses at issue. Instead, the brief offers three pages of arguments attacking Plaintiffs' position. Defendants have failed to make a showing sufficient to establish the existence of all elements essential to their nominative fair use case.

Plaintiffs, however, have demonstrated persuasively that these four uses fail to pass muster under either the second or third elements of the <u>Century 21</u> test. As to the second element, it is apparent that the click buttons did not use only so much of the mark as was necessary: the use of the heart apostrophe and the font styling was entirely unnecessary to describe Plaintiff's product. Plaintiff's product could be adequately identified by the use of the phrase "David's Bridal" without the protected design elements of the marks, as Defendants did without apparent problem on the individual dress pages. Applying the third element to the third and fourth uses, defendant's conduct or language does not reflect the true and accurate relationship between Plaintiffs' and Defendants' products or services. No reasonable jury could conclude that "Designer: Compare to David's Bridal" reflects the true and accurate relationship between Plaintiffs' and Defendants' products or services. In fact, that statement is so manifestly confusing that no reasonable person could ascertain from it the true and accurate relationship between Plaintiffs' and Defendants' products or services.

The same analysis applies to the statement "Compare to David's Bridal wedding dresses are 30% to 40% off David's Bridal suggested retail price!"  No reasonable jury could conclude that this statement reflects the true and accurate relationship between Plaintiffs' and Defendants' products or services.  Again, this statement is so manifestly confusing that no person could reasonably ascertain from it the true and accurate relationship between Plaintiffs' and Defendants' products or services.  In this instance, in particular, a reasonable reader could understand this to say that HOB was selling discounted authentic DBD dresses.  This is not comparative advertising that straightforwardly reflects the true and accurate relationship between Plaintiffs' and Defendants' products.

As to the four uses listed above, the evidence of record shows a complete failure of proof on either the second or third element of the affirmative defense of nominative fair use.  There are thus no factual disputes which preclude judgment as a matter of law.  As to these uses, Plaintiffs' cross-motion for partial summary judgment on the affirmative defense of nominative fair use will be granted.  Moreover, because Defendants asserted only this affirmative defense to Plaintiffs' motion for summary judgment on trademark infringement and unfair competition, this Court deems any other affirmative defenses to have been abandoned.  As to these four uses, trial will concern only Plaintiffs' infringement case, and no affirmative defenses will be tried.

B.    Third Claim: trademark dilution

Defendants move for summary judgment on Plaintiffs' dilution claim with three arguments: 1) DBD has admitted that its mark is not famous; 2) nominative uses are excepted from anti-dilution law; and 3) there is no evidence of actual dilution, which must be shown to recover damages.

14

The first argument relates to DBD's motion for leave to withdraw its admission that its trademark is not a famous mark.  DBD asserts that what HOB terms an admission (that the mark is not famous) is the result of an oversight in which HOB's requests for admissions were overlooked, causing DBD's responses to be served about one year late on October 9, 2008. Because of the delay, the requests were deemed admitted under Rule 36(a)(3).  DBD asks for leave to withdraw this admission.

In opposition, HOB begins by arguing that a request to withdraw admissions pursuant to Rule 36(b) should be decided not under the standard of Rule 36(b) but under the standard of Rule 6(b)(2) – why this Court would apply not the relevant rule but some other one is unexplained. HOB proceeds to provide arguments supposedly directed at the Rule 36(b) standard, but many of the arguments misapprehend the Rule.  Rule 36(b) states:

> Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

HOB first presents several pages of arguments on excusability that are irrelevant to Rule 36(b). As to prejudice, HOB articulates no specific way in which it would be prejudiced were DBD's motion granted.  Emme, which joined the case only after DBD's responses had been served, also opposes the motion on the grounds of prejudice.

The Court is not persuaded that withdrawal of the admission would prejudice the requesting party in defending the action on the merits.  DBD's contention that its trademark is famous is plainly and prominently stated in the Complaint that initiated the action.  The claim that Defendants relied on DBD's failure to respond as an admission that the mark was not

famous is not credible, given the salience of this contention in the Complaint.  Nor has HOB articulated any specific way in which it would be prejudiced by granting the motion.  This Court also finds that granting the motion would promote the presentation of the merits of the action. Inasmuch as it is undisputed that DBD is the leading bridal retailer in the United States, and that its claim that its trademark is famous has been integral to its case from the beginning, allowing DBD to make its case that its trademarks are famous would lead to a more just determination of the merits.  The Court will grant DBD's motion for leave to withdraw its deemed admissions and permit its Responses, served October 9, 2008, to be accepted.

The decision to grant this motion removes the assumption underlying HOB's first dilution argument – that DBD has admitted that its trademarks are not famous.  As to the second argument, that nominative uses are excepted from anti-dilution law, this Court's decision that four of the uses are not nominative defeats it.  As to the third argument, that there is no evidence of actual dilution as required to obtain damages, the Second Amended Complaint does not seek damages for dilution, and so this argument is irrelevant.  As to the federal dilution claim, HOB has failed to show that it is entitled to judgment as a matter of law.  As to the Third Claim, the motion for summary judgment will be denied.

DBD has cross-moved for partial summary judgment on the claims of trademark dilution under federal and state law.  The short section of the brief on these claims appears to be an afterthought.  The single paragraph in which it attempts to marshal the evidence of likelihood of causing dilution by blurring does no more than argue that HOB's selling copies of DBD's gowns at lower prices will weaken the power of DBD's marks.  The problem is that the pricing of the goods is not an issue of trademark dilution. The Lanham Act states: "'dilution by blurring' is

16

association arising from the similarity between a mark or trade name and a famous mark that

impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). The dilution by

blurring analysis examines the interactive effect of the use of the marks on the distinctiveness of

the trademark. The pricing of the goods is an entirely different matter. As to the claims of

trademark dilution, DBD has failed to show that it is entitled to judgment as a matter of law, and

its cross-motion for summary judgment on these claims will be denied.

> C.    Seventh Claim: false advertising

HOB moves for partial summary judgment on the Seventh Claim, for false advertising

pursuant to 15 U.S.C. § 1125(a)(1)(B), which states:

> Any person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which –
> . . .
>     (B) in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

A cause of action under this statute requires pleading and proof of five elements:

> 1) that the defendant has made false or misleading statements as to his own
> product [or another's]; 2) that there is actual deception or at least a tendency to
> deceive a substantial portion of the intended audience; 3) that the deception is
> material in that it is likely to influence purchasing decisions; 4) that the advertised
> goods traveled in interstate commerce; and 5) that there is a likelihood of injury to
> the plaintiff in terms of declining sales, loss of good will, etc.

Ditri v. Coldwell Banker Residential Affiliates, 954 F.2d 869, 872 (3d Cir. 1992).

HOB first argues that DBD has no evidence to prove the first element, that HOB made

any false or misleading statements. At summary judgment, this Court makes every reasonable

inference in favor of the nonmovant.  DBD has offered evidence of HOB's advertising – pages from the HOB Website – from which a reasonable jury could conclude that HOB made at least one misleading statement.  The clearest example is the statement: "Designer: Compare to David's Bridal," which is easily judged as misleading.  This is sufficient to defeat HOB's motion for partial summary judgment on the Seventh Claim, and, as to this claim, HOB's motion for partial summary judgment will be denied.

     D.    <u>Claims under New Jersey law</u>

HOB moves for partial summary judgment on the Fourth and Fifth claims, for trademark infringement, unfair competition, and trademark dilution under New Jersey law.  HOB asserts that the arguments it made for the similar claims under federal law extend to the state law claims. For the reasons already stated, then, HOB's motion for partial summary judgment on the Fourth and Fifth Claims will be denied.

     E.    <u>Sixth Claim: copyright infringement</u>

HOB moves for partial summary judgment on the Sixth Claim, for copyright infringement, by adopting the arguments made by Emme in its separate summary judgment motion.

"The elements of a copyright infringement action are (1) ownership of a valid copyright and (2) copying by the alleged infringer." <u>Masquerade Novelty v. Unique Indus.</u>, 912 F.2d 663, 667 (3d Cir. 1990) (citation omitted).  "In any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).  "The presumption flowing from § 410(c) is not an insurmountable one, and merely shifts

to the defendant the burden to prove the invalidity of the plaintiff's copyrights." Masquerade, 912 F.2d at 668.

The following arguments have been taken from Emme's brief in support of its motion for summary judgment. Emme first contends that, for David's dress style 5268, DBD has produced no registration. The Amended Complaint does not identify by specific registration numbers or by any other means the copyrights at issue. DBD's Rule 56.1 Counter-Statement asserts that DBD owns copyright registrations of twenty specific dress designs. (DBD's 56.1 Stmt. ¶ 31.) David's dress style 5268 is not among them. Thus, as to David's dress style 5268, HOB's motion for summary judgment is denied because there appears to be no controversy over this design. This Court today rules, however, that DBD's copyright claims are limited to the twenty dress designs identified in paragraph 31 of the Counter-Statement.

Emme next argues that, as to dress styles K2000 and CV008, there can be no liability because the applications were for multiple dresses that were not part of a related group. Of these two designs, only CV008 is asserted in paragraph 31 of the Counter-Statement; again, dress style K2000 is not at issue in this case. As to dress style CV008, DBD's opposition brief does not address this argument, nor does it address the issue in its response to the same assertion made in paragraph 42 of the Joint Rule 56.1 Statement filed with Emme's motion for summary judgment. Thus, the sole question is whether HOB has shown that it is entitled to judgment as a matter of law. It has not done so. Emme cites as legal authority for its position 17 U.S.C. § 408(c)(1), which states (italics added):

(c) Administrative classification and optional deposit.

(1)      The Register of Copyrights is authorized to specify by regulation the

19

> administrative classes into which works are to be placed for purposes of
> deposit and registration, and the nature of the copies or phonorecords to be
> deposited in the various classes specified. The regulations may require or
> permit, for particular classes, the deposit of identifying material instead of
> copies or phonorecords, the deposit of only one copy or phonorecord
> where two would normally be required, or a single registration for a group
> of related works. *This administrative classification of works has no
> significance with respect to the subject matter of copyright or the exclusive
> rights provided by this title.*

Thus, the statutory provision on which Emme's invalidity argument is based specifically states

that it has no significance with respect to the subject matter of copyright or the rights protected.

HOB has not persuaded this Court that, as to dress style CV008, it is entitled to judgment as a

matter of law, and, in this regard, HOB's motion for partial summary judgment will be denied.

Lastly, Emme contends that, as to the nineteen other copyright registrations, the dresses

are not entitled to copyright protection.  Emme begins by setting up a straw man, arguing that the

dresses themselves are not protected to copyright protection because they are utilitarian.  DBD

does not dispute this.  Emme and DBD agree that only the designs of the ornamentation of the

dresses, such as beadwork and lace designs, which have intrinsic value as a work of art and can

exist independently of the dress, may be entitled to protection under the Lanham Act.  See,

generally, 1-2 M. Nimmer & D. Nimmer, Nimmer on Copyright § 2.08 (H) (2009).

Emme's argument takes a major wrong turn when Emme asserts that DBD bears the

burden of proving the validity of the copyright.  As the Third Circuit pointed out in Masquerade,

because of the statutory presumption of validity, the defendant bears the burden of proving

invalidity.  912 F.2d at 668.  Thus, Emme's argument that DBD has failed to meet its burden of

proof of validity is exactly wrong.  There is no dispute that DBD owns copyright registrations for

the twenty designs which, pursuant to 17 U.S.C. § 410(c), constitutes prima facie evidence of the

validity of the copyrights.  Under <u>Masquerade</u>, the burden then shifts to the defendant to prove the registrations invalid.  HOB has not met this burden.  Emme, and thus HOB, presents only vague and general arguments of invalidity, asserting that the registrations, as a whole, are ambiguous or mysterious about what is protected.  Conspicuously absent from these arguments is: 1) any citation to any law which authorizes this Court to invalidate a registration based on the ambiguity that Emme asserts; and 2) any discussion of any specifics of any registration, establishing such ambiguity.  In view of the burden of proof of copyright invalidity that it will bear at trial, HOB has not shown that it is entitled to judgment of copyright invalidity as a matter of law.  As to the Sixth Claim for copyright infringement, HOB's motion for partial summary judgment will be denied.

Lastly, the parties have argued about the remedies available to DBD should it prevail on its trademark infringement claims.  There is no dispute that 15 U.S.C. § 1117 clearly states the remedies available for trademark infringement.  The parties have not argued persuasively that any remedies may be eliminated as a matter of law at this juncture.

<u>**CONCLUSION**</u>

For the reasons stated above, as to the nominative fair use affirmative defense to Plaintiffs' claims for trademark infringement and unfair competition, this Court determines that Plaintiffs have demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  As to this affirmative defense only, and only in regard to the four uses specified in this Opinion, Plaintiff's cross-motion for partial summary judgment is granted and, as to this affirmative defense, Judgment is entered in Plaintiffs' favor.  As to all other aspects of Plaintiff's cross-motion for

21

partial summary judgment, the cross-motion is denied.  Defendants' motion for summary

judgment is denied.  Plaintiffs' motion to withdraw deemed admissions pursuant to Rule 36(b) is

granted.  Defendants' motion to strike portions of Christopher Kelly and Kenneth Green's

declarations is denied.


                                                            s/ Stanley R. Chesler
                                                      STANLEY R. CHESLER, U.S.D.J.


Dated: January 20, 2010