<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                              :

| | |
|---|---|
| DAVID'S BRIDAL, INC. and DBD, INC., : | |
|             : | |
|        Plaintiffs,       : | Civil Action No. 06-5660 (SRC) |
|             : | |
|     v.            : | **OPINION** |
|             : | |
| THE HOUSE OF BRIDES, INC. et al.,   : | |
|             : | |
|        Defendants/   : | |
|        Third-party Plaintiffs,  : | |
|     v.            : | |
|             : | |
| EMME BRIDAL, INC. et al.,      : | |
|             : | |
|        Third-party Defendants.  : | |

_____:

<u>**CHESLER, U.S.D.J.**</u>

This matter comes before the Court on the motion for summary judgment, pursuant to

Federal Rule of Civil Procedure 56, by third-party Defendant Emme Bridal, Inc. ("Emme"). For

the reasons stated below, the motion will be granted.

**<u>BACKGROUND</u>**

This case arises from a dispute between two competitors in the retail bridal business.

Defendants are The House of Brides, Inc. and House of Brides World's Largest "On-Line"

Wedding Store, Inc. (collectively, "Defendants" or "HOB"). Plaintiffs are David's Bridal, Inc.

and DBD, Inc. (collectively, "Plaintiffs" or "DBD"). In brief, HOB owns and operates a

commercial website (the "HOB Website") for the retail sale of bridal gowns under the domain

name www.houseofbrides.com. DBD owns and operates 305 DAVID'S BRIDAL® retail stores

in the United States.

On November 28, 2006, DBD filed a Complaint against HOB in this Court and, subsequently, a Second Amended Complaint which asserts seven claims.  In short, these claims relate to allegations that HOB sold dresses that were copies of dresses sold by DBD and infringed DBD's trademarks and copyrights.

On January 21, 2009, HOB filed a Third-Party Complaint ("TPC") against Emme, alleging that Emme supplied it with the dresses at issue.  The TPC asserts two claims: 1) breach of warranty of title and against infringement; and 2) implied indemnity.  On October 1, 2009, Emme filed its instant motion for summary judgment.

## ANALYSIS

### I.      Legal Standard

#### A.      Motion for summary judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

2

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II.      Emme's motion for summary judgment

The parties agree that the TPC's first claim, for breach of warranty, is governed by the Uniform Commercial Code of Illinois.  Chapter 810 of the Illinois Compiled Statutes Annotated contains the Illinois Uniform Commercial Code.  Section 2-607 states, in pertinent part:

> Sec. 2-607. Effect of acceptance; notice of breach; burden of establishing breach after acceptance; notice of claim or litigation to person answerable over.
>
> . . .
>
> (3) Where a tender has been accepted
>
> (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and
>
> (b) if the claim is one for infringement or the like (subsection (3) of Section 2-312 [810 ILCS 5/2-312]) and the buyer is sued as a result of such a breach he must so notify the seller within a reasonable time after he receives notice of the litigation or be barred from any remedy over for liability established by the litigation.
>
> (4) The burden is on the buyer to establish any breach with respect to the goods accepted.
>
> (5) Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over
>
> (a) he may give his seller written notice of the litigation.
>
> If the notice states that the seller may come in and defend and that if the seller

does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound.

(b) if the claim is one for infringement or the like (subsection (3) of Section 2-312 [810 ILCS 5/2-312]) the original seller may demand in writing that his buyer turn over to him control of the litigation including settlement or else be barred from any remedy over and if he also agrees to bear all expense and to satisfy any adverse judgment, then unless the buyer after seasonable receipt of the demand does turn over control the buyer is so barred.

810 I.L.C.S. § 5/2-607. Section 2-607(3)(a) imposes upon the buyer an obligation to notify the seller of breach or be barred from any remedy. Section 2-607(3)(b) specifically imposes upon a buyer sued for infringement the obligation to notify the seller of the litigation within a reasonable time after the buyer receives notice of the litigation or be barred from any remedy. The evidentiary record before this Court makes clear that HOB has completely failed to prove that it has satisfied the notice requirement of § 2-607(3)(b).

Emme first argues that the TPC does not adequately allege facts which satisfy the requirements of § 2-607(3)(b) and thus fails to state a valid claim for relief. In response, HOB argues that, because Emme filed an Answer to the TPC, Emme waived any argument that the pleading was insufficient. The Answer, however, expressly states as an affirmative defense that the TPC fails to state a valid claim for relief. (Answer to TPC at 4.) There is no basis to consider waiver. Moreover, failure to state a claim upon which relief can be granted is not an affirmative defense, is not waived by failure to raise it in an answer, and can be raised in a motion for judgment on the pleadings.

HOB does not otherwise respond to Emme's argument that the TPC fails to adequately plead notice, which is correct. The TPC alleges no facts that could establish satisfaction of the

notice requirements of § 2-607(3)(b).  In <u>Connick v. Suzuki Motor Co.</u>, 174 Ill. 2d 482, 495 (Ill.

1996), the Illinois Supreme Court held that "failure to allege sufficient notice is fatal to plaintiffs'

breach of warranty claims."  The TPC fails to state a valid claim for relief for breach of warranty

under the laws of the state of Illinois.  Moreover, the factual assertions contained in HOB's brief

indicate that the dismissal should be with prejudice because HOB would be unable to factually

support a contention that it had provided Emme with adequate notice.  Emme has shown that,

even if this claim had been adequately pled, it is entitled to judgment as a matter of law: HOB

has failed to prove that it satisfied the infringement litigation notice requirement.

HOB contends that, under Illinois law, "[a] buyer is deemed to have met the notice

requirement when the seller has actual knowledge of the issue with the subject product."  (HOB's

Opp. Br. 8.)  The case cited by HOB as authority for this proposition, however, stands for a

related, but substantially different, principle: "When a seller's employee actually observes the

failure of a product, this constitutes notice to the seller."  <u>Malawy v. Richards Mfg. Co.</u>, 501

N.E.2d 376, 384 (Ill. App. Ct. 5th Dist. 1986).  The <u>Malawy</u> court did not make the broader

statement asserted by HOB, but rather the more common-sense and limited statement that is not

relevant here, since no product failure is at issue.  Furthermore, this principle appears far

removed from the litigation notice requirement imposed by § 2-607(3)(b).

HOB argues that the fact that Emme had been sued by DBD in Texas in 2004 proves that

Emme had actual knowledge of DBD's claims about the dresses.  This argument, even if correct,

does not win the point for HOB.  Section 2-607(3)(b) requires that the buyer notify the seller of

particular infringement litigation.  DBD's filing suit against Emme in 2004 does not provide any

notice to Emme that HOB was sued by DBD in 2006 over claims of infringement.  The fact of

the Texas litigation provides no evidence that HOB met its notice obligation related to the

present litigation, or should be excused from it.

Illinois applies the following standard in determining the sufficiency of notice:

"[N]otification need merely be sufficient to let the seller know that the transaction is still

troublesome.  There is no need to state all objections the buyer has or for the buyer to say he is

holding the seller liable and threaten litigation."  Crest Container Corp. v. R.H. Bishop Co., 445

N.E.2d 19, 25-26 (Ill. App. Ct. 5th Dist. 1982).  The parties do not dispute that certain

communications between Buziecki of HOB and Yeh of Emme, if made within a reasonable time

after HOB received notice of the litigation, would be adequate under this standard.  The sole

matter in dispute is when the earliest qualifying communication took place, and whether this was

within a reasonable time after HOB received notice of the litigation, as required by the U.C.C.

HOB contends that, because there is no "hard and fast rule as to what constitutes a

reasonable time frame for notice," there must be a factual issue about whether the notice was

reasonable under the UCC, which precludes a grant of summary judgment.  (HOB's Opp. Br.

10.)  This is insufficient under Rule 56(e), which requires that the adverse party set forth

"specific facts showing that there is a genuine issue for trial."  It is not enough to merely suggest

that a factual issue exists because of the absence of a bright line rule; it must be shown by

specific facts that the genuine factual dispute exists.  Except for the matter of the date of the Yeh

conversation at the Chicago Bridal Show, discussed infra, HOB fails to set forth specific facts

related to the matter of the reasonable time for notice.  Even if it were true, as a general matter,

that there is no bright line rule as to what time period is reasonable, that observation alone is

insufficient to raise a genuine issue as to a material fact.

7

HOB cites the Kentucky case of Mullins v. Wyatt, 887 S.W.2d 356, 357 (Ky. 1994), as authority for the proposition that notice by means of litigation constitutes sufficient notice under § 2-607(3)(a). This is an interesting case to cite, since the Mullins court clearly stated that it was declining to adopt the rule of the majority of jurisdictions: "We are well aware that text writers and most decisional law treat pre-litigation notice as a condition precedent to the bringing of a civil action for breach of warranty." Id. Furthermore, Mullins deals with § 2-607(3)(a), not § 2-607(3)(b), which is at issue here. Mullins does not persuade this Court that the notice requirement of § 2-607(3)(b) can be satisfied by filing a complaint. To prove its claim, HOB must prove that it gave Emme sufficient notice prior to filing the TPC, within a reasonable time after it received notice of the suit against it.

HOB argues that it has offered evidence sufficient to raise a genuine factual issue as to the date on which the notice requirement of § 2-607(3)(b) was satisfied. As evidence that notice was given early enough, HOB points to the affidavit of Dale Buziecki, a principal of HOB. Buziecki stated that, in either April or October of 2007, he spoke with Emme representatives Nick Yeh and Mike Yeh:

> Nick and Mike told me at that time that they knew that David's had sued HOB for trademark infringement and asked me how the case was going. I informed Nick and Mike that David's suit was for both trademark and copyright infringement, and I thought the primary claim was copyright infringement. Nick and Mike responded that there were no copyright issues with Emme's dresses, and that if there were David's would have sued Emme. They also brought up at that time the prior litigation that Emme and David's had been involved with in Texas, and that after that case ended Emme made sure there were no further issues with infringing on David's copyrights.

(Buziecki Aff. ¶ 8.)

In its Reply, Emme contends that the Buziecki affidavit contradicts previous disclosures

about the date of the Yeh conversation at the Chicago Bridal Show, and that it is a sham

affidavit.  As to the sham affidavit doctrine, the Third Circuit has stated:

> A sham affidavit is a contradictory affidavit that indicates only that the affiant
> cannot maintain a consistent story or is willing to offer a statement solely for the
> purpose of defeating summary judgment. A sham affidavit cannot raise a genuine
> issue of fact because it is merely a variance from earlier deposition testimony, and
> therefore no reasonable jury could rely on it to find for the nonmovant.

Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007).  The Third Circuit

advocates a "flexible approach" to determining whether an affidavit should be considered a

sham, since "not all contradictory affidavits are necessarily shams." Id. at 254.  The Third

Circuit recognizes two methods that may be used to establish that a contradictory affidavit is not

a sham: 1) independent evidence in the record may bolster the questionable affidavit; or 2) an

affiant may offer a satisfactory explanation for the discrepancy between the prior deposition and

the affidavit.  Id.

Emme argues that, as to the date on which Buziecki had a conversation about the

litigation with the Yeh brothers at the Chicago Bridal fair, the Buziecki affidavit contradicts the

statements made in HOB's answers to Emme's interrogatories and in the Buziecki deposition.

In brief, Emme's interrogatory number 3 asked HOB to fully identify all admissions that

Emme had made concerning the subject-matter of the litigation.  HOB responded:

> HOB is not aware of any such admissions, but Emme representatives (Mike Yeh
> and Nick Yeh) told Dale Buziecki on two separate occasions, one by telephone
> with Mike Yeh (date unknown) and the other in person at the Chicago Bridal
> Show with Nick Yeh (March 2009) that David's Bridal has no copyright on the
> subject dresses or David's Bridal would be suing Emme, not HOB.

(Dory Cert. Ex. 1.)  This says nothing about Emme's having notice that DBD sued HOB in 2006.

It does, however, provide evidence about the date of the Yeh Chicago Bridal Fair conversation.

During his deposition, Buziecki was questioned on the topic of the Yeh conversations. Buziecki stated that he had spoken to Mike Yeh on the telephone "and told him that my insurance company was suing him." (Buziecki Dep. 49:21-50:19.)  Buziecki was asked about the "date unknown" assertion in the interrogatory answer and whether he could "pin down" the date of his telephone conversation with Yeh.  (Id. at 50:2-4.)  Buziecki answered by saying only: "I don't know if it's the first time I talked to him." (Id. at 50:5-6.)  Asked again later about the timing of the telephone conversation, Buziecki stated: "I think it was after the complaint [against Emme] was filed." (Id. at 51:16-17.)  Spontaneously, Buziecki added: "And the same conversation took place at the last Chicago market with his brother." (Id. at 50:20-21.)  Buziecki stated that Nick Yeh approached him and asked "how is the David suit going." (Id. at 50:23-25.)  Asked whether that show was in March of 2009, Buziecki answered: "If the show was in March, I don't remember.  I think it was." (Id. at 51:5-6.)

HOB filed an affidavit by Buziecki in support of its opposition to the instant motion for summary judgment.  In the affidavit, Buziecki states that he had a conversation with the Yeh brothers at the Chicago Bridal Market show in April or October of 2007.  (Buziecki Aff. ¶ 8.) Buziecki stated that, in this conversation, the Yeh brothers asked him how the lawsuit with David's was going.  (Id.)   Buziecki also stated that he telephoned Mike Yeh to tell him that HOB was bringing Emme into the case "in the latter part of 2008." (Id. at ¶ 9.)

As to the date of the Chicago Bridal Fair Yeh conversation, the Buziecki affidavit ("April or October 2007") contradicts both the Buziecki deposition (the prior Fair date closest to June, 2009) and interrogatory answer number three (March 2009).  The Buziecki affidavit is thus a contradictory affidavit submitted for the purpose of defeating a motion for summary judgment.

Under Third Circuit law, such a contradictory affidavit may be accepted, and allowed to raise a genuine issue as to a material fact sufficient to defeat a motion for summary judgment, if it is corroborated by independent evidence, or if the affiant offers a satisfactory explanation for the discrepancy.  No corroborating independent evidence appears in the record.  This Court Ordered HOB to submit a certification that might explain the apparent discrepancy.

In this supplemental Buziecki certification, Buziecki stated that the Chicago Bridal show takes place twice each year, in March or April, and in October.  (Buziecki Supp. Cert. ¶ 4.) Buziecki reaffirmed the assertion made in his affidavit that the first Yeh conversation took place in either April or October 2007.  (Id. at ¶ 9.)  Buziecki's explanation of the discrepancy follows:

> I spoke with my wife Eva about the date of my conversation with the Yehs about the David's Bridal case that she witnessed at the Chicago Bridal Show.  After speaking with my wife about the issue, and reviewing the timing of when I learned of David's Bridal lawsuit against HOB, the timing of when HOB named Emme in this case, and thinking about what was said during our conversations, I am certain that one of my conversations with the Yehs occurred at one of the 2007 Chicago Bridal Shows.

(Id. at ¶ 12.)  This is not a satisfactory explanation of the discrepancy.  It actually is little more than a statement that Buziecki gave further thought to the question of the date and decided to change his mind.  It does very little to truly address the questions before this Court: didn't Buziecki give serious thought to the matter of his recollection of the date when testifying at his deposition, and when participating with counsel in answering the interrogatory question?  What would explain why further serious thought produced a different recollection?  Buziecki offers this Court no basis to conclude that his current statement is more credible or accurate than the previous ones.  The explanation that he thought more about the matter does not provide a satisfactory explanation of the discrepancy.

Buziecki also states in the supplemental certification that his interrogatory answer specified the date of March 2009 for the conversation because the interrogatory did not request all conversations, but was limited to admissions.  (Id. at ¶ 13.)  This relies on a picayune distinction and fails as an explanation.  The interrogatory question asked for "in full and complete detail all admissions that you contend that Emme has made."  The assertion that Buziecki believed that a 2009 conversation came within the scope of the interrogatory, but that a very similar 2007 conversation did not, is not credible in the slightest.

In the supplemental certification, Buziecki advances an interpretation of this deposition statement, "If the show was in March, I don't remember.  I think it was."  (Id. at ¶ 14.)  Buziecki asserts that this means that he was not sure during the deposition when this conversation took place.  (Id.)  This is unpersuasive.  When that deposition statement is viewed in context, it is clear that Buziecki expressed certainty that the conversation had taken place at the last Chicago Bridal Show prior to the date of the deposition in June of 2009.  (Buziecki Dep. 50:20-21.)  Buziecki expressed uncertainty only about the month in which that last Show had occurred, and not about the year in which the conversation took place.  Again, in this regard, Buziecki's attempt to explain the discrepancy is not credible.

This Court has examined the Buziecki supplemental certification and finds that it provides no credible or satisfactory explanation of the discrepancy between the Buziecki affidavit and the prior disclosures.  Rather, the supplemental certification provides support for the conclusion that the Buziecki affidavit is a sham affidavit.  "When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a

'sham,' therefore not creating an impediment to a grant of summary judgment based on the deposition." Jiminez, 503 F.3d at 254.

This Court concludes that, as to the issue of the date of the Yeh conversation at the Chicago Bridal Fair, the Buziecki affidavit is a sham affidavit.  It fails to raise a genuine factual question as to the earliest date that HOB provided to Emme the notice required under 810 I.L.C.S. § 5/2-607(3)(b).  The record shows that DBD filed an infringement suit against HOB in this Court on November 28, 2006; while there is some dispute over when HOB was served with the Complaint, HOB certainly had notice of the litigation before April 27, 2007, when it moved to set aside the clerk's entry of default.  The admissible evidence of record shows that the earliest date on which Emme had notice of this litigation was in March of 2009, nearly two years later. No reasonable jury could receive this evidence and conclude that HOB had notified Emme within a reasonable time after it received notice of the litigation.  Furthermore, HOB has provided no explanation for its failure to give timely notice.

A delay in notice of almost two years is clearly unreasonable.  Emme asserts persuasively that it was prejudiced by the delay: during that nearly two-year period, it was unable to mitigate its damages or participate in the litigation.  These prejudicial impacts are substantial.  Emme contends that, during this period, at least 121 dresses that are the subject of this litigation were sold by Emme to HOB and resold by HOB to its retail customers.  Whatever the true number is, it is certain that Emme was deprived of the opportunity to mitigate its damages by not selling the allegedly infringing dresses.  It is also clear that, during this period, Emme was deprived of the opportunity to participate in the litigation, which could well be to its detriment.

A grant of summary judgment is appropriate when the evidence "is so one-sided that one

party must prevail as a matter of law." Anderson, 477 U.S. at 252.  That is the case here. Because this Court has rejected the Buziecki affidavit as a sham affidavit, a reasonable jury could only conclude that HOB delayed almost two years before it gave the required notice of the litigation to Emme.  HOB has offered no evidence from which a reasonable finder of fact could conclude that this lengthy delay was reasonable; to the contrary, the evidence that it was unreasonable is so one-sided that Emme must prevail as a matter of law.

As to HOB's claim for breach of warranty, there is a complete failure of proof as to an essential element of the claim, giving notice of infringement litigation within a reasonable time after having received notice of the litigation, as required by 810 I.L.C.S. § 5/2-607(3)(b).  Emme has demonstrated that it is entitled to judgment on the first count as a matter of law.  As to the breach of warranty claim, HOB has failed to defeat Emme's motion for summary judgment, which will be granted.

Emme contends that the second count of the TPC, for implied indemnity, fails to state a valid claim because federal common law recognizes no implied indemnity claim for trademark or copyright infringement.  The parties then debate whether the claims are under federal law or state law, bringing in preemption arguments and other complexities.  This Court need not reach into this thicket, because the second count is so far from stating a valid claim for implied indemnity, and so obviously foreclosed by this Court's decision on the first count, that these arguments need not be evaluated at this time.

As explained in American Jurisprudence 2d, there are three scenarios in which indemnification obligations may arise: 1) under the express terms of a contract; 2) indemnity implied in fact, in which a contractual indemnification obligation is implied between the parties;

14

and 3) indemnity implied in law, in which the indemnification obligation is implied by the law in the absence of an express or implied contractual indemnification obligation.  41 Am. Jur. 2d Indemnity § 20 (2010).

Indemnity is implied in law to produce an equitable outcome when a blameless party is held vicariously liable for the torts of the true wrongdoer.  The Restatement (Third) of Torts sums up the common law principles of indemnification as follows:

> (a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, if:
>
> (1) the indemnitor has agreed by contract to indemnify the indemnitee, or
>
> (2) the indemnitee
>
> (i) was not liable except vicariously for the tort of the indemnitor, or
>
> (ii) was not liable except as a seller of a product supplied to the indemnitee by the indemnitor and the indemnitee was not independently culpable.

Restatement 3d of Torts: Apportionment of Liability § 22 (2000).  Indemnity implied in law involves the principles stated in § 22(a)(2).

The second count appears to aim to state a claim for an indemnification obligation implied in fact, as it states: "Through their actions, Emme and Impression implied that they would indemnify HOB and HOL for their offering for sale the 'Compare to David's Bridal' line." (TPC ¶ 27.)  The TPC fails, however, to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  The TPC, in fact, pleads no facts to support the assertion that Emme engaged in specific actions that implied a promise to indemnify HOB.  This Court has no idea what HOB alleges that Emme did to imply a

promise to indemnify.[1]  The second count fails to state a valid claim for relief.  Were it not for the fact that, as will be explained next, no indemnity claim is possible, the claim would be dismissed without prejudice.

This Court need not reach the question of whether the second claim should be dismissed for failure to state a valid claim, however, because it is clear that summary judgment should be granted: Emme is entitled to judgment on it as a matter of law.  This Court has concluded that judgment will be entered in favor of Emme on the breach of warranty claim under the Illinois U.C.C.  The relevant provision, § 2-607(3)(b), states:

> if the claim is one for infringement or the like [] and the buyer is sued as a result of such a breach he must so notify the seller within a reasonable time after he receives notice of the litigation or be barred from any remedy over for liability established by the litigation.

This Court has determined that HOB failed to give Emme the required notice.  Pursuant to § 2-607(3)(b), HOB is barred from "any remedy [] for liability established by the litigation."  This forecloses any and every possible claim for indemnification, since indemnification requires that liability be established by the litigation.  No matter how the indemnification claim were to be repled, it would be barred under the Illinois U.C.C.  As to the second count of the TPC, Emme's motion for summary judgment will be granted, and judgment will be entered in Emme's favor.

---

[1] Nor does HOB's opposition brief articulate HOB's factual basis for asking that an indemnification obligation be implied.

## CONCLUSION

For the reasons stated above, Emme has shown that it is entitled to judgment as a matter of law on the TPC in its entirety.  Emme's motion for summary judgment is granted, and Judgment on the first and second counts is entered in Emme's favor.


        s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.


Dated: February 23, 2010